UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DELROY ASKINS,

                Plaintiff,

-against-

PRESTIGE MANAGEMENT INC.; LOWELL HENDRICKS,

                Defendants.

25-CV-0461 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff, who is appearing *pro se*, brings this action invoking the Court's federal question jurisdiction, alleging that Defendants violated his federal constitutional rights and his rights under the Americans with Disabilities Act of 1990 ("ADA"). The Court construes the complaint as also asserting claims under the Rehabilitation Act and the Fair Housing Act ("FHA"). Named as Defendants are Prestige Management, Inc. and Lowell Hendricks, whom Plaintiff identifies as the "supper," which the Court understands to mean the superintendent of his building. By order dated February 11, 2025, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses the complaint, but grants Plaintiff 30 days' leave to replead his claims in an amended complaint.

**STANDARD OF REVIEW**

    The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following facts are drawn from the complaint.[1] On January 10, 2024, Plaintiff was threatened by the superintendent of his building, presumably Defendant Hendricks. Later that day, when Plaintiff was coming out of the elevator, the superintendent "came at [him]." (ECF 1,

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

at 8.) Plaintiff got scared, "sprayed [his] pepper spray in the air," and went back into the elevator. (*Id.*) The superintendent followed Plaintiff into the elevator and "choked [him] and beat [him] up." (*Id.*) The security guard watched the superintendent go into the elevator while Plaintiff was screaming, but he did not assist Plaintiff. Plaintiff called the police, "but they did nothing wanting to arrest both of us." (*Id.*) Building management did not check on Plaintiff or "apologize for what their employee did to [him]." (*Id.*)

In a separate event, on February 17, 2024, Plaintiff gave the building's security guard $25 to give to the driver who will deliver [Plaintiff's medical] supplies and also leave [his] supplies" with the security guard. (*Id.*) The security guard told Plaintiff that his medical supplies were never delivered but Plaintiff "know[s] that is a lie" because the driver called Plaintiff's home health aide. (*Id.*) Plaintiff called the police and his supplies "were found" by New York City Police Department officers on March 15, 2024. (*Id.*) The police were unable to get any information from the security cameras. While "[n]o one seems to know what happened to [his] supplies in a HUD Building with security," Plaintiff asserts that "management or security" took his "personal health supplies away from [him]." (*Id.*)

On November 8, 2023, the superintendent denied Plaintiff access to the community room "after [Plaintiff] had already mentioned to the manager" that he was going to use the room to meet with his nephew. (*Id.*) The super "believed that the community room is just for him" and that "he is the only person that can use the T.V. while folding his clothes and everyone else needs to go somewhere else." (*Id.*)

Plaintiff asserts that the building's management is "to blame for the conduct of their employee and themselves because they do not take the responsibility to check on complaints or follow up [on] issues that the daily manager brings to their attention." (*Id.* at 9.)

3

Plaintiff seeks $10 in damages and for the Court to order that "[e]very [b]lind [s]pot [b]e [f]ull with [a] [w]orking [c]amera [i]ncluding the [e]levators." (*Id.*)

## DISCUSSION

### A.    Federal Constitutional Claims

Plaintiff's claims that Defendants violated his federal constitutional rights are brought under 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). A claim for relief under Section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties are therefore not generally liable under the statute. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

Defendants Prestige Management and Lowell Hendricks are private parties who are not alleged to work for any state or other government body. Although there are limited circumstances in which a nominally private actor can be deemed a state actor for Section 1983 purposes,[2] providing housing is not one of those circumstances. *See, e.g.*, *George v. Pathways to*

---

[2] Those limited circumstances include where (1) the nominally private entity acts "pursuant to the 'coercive power' of the state or is 'controlled' by the state"; (2) the state encourages, or the entity willfully participates, in a joint activity with the state, or the "entity's functions are 'entwined' with state policies"; or (3) the entity "has been delegated a public function by the state." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d. Cir. 2008) (quoting *Brentwood Acad.*, 531 U.S. at 296.

4

*Hous., Inc.*, No. 10-CV-9505 (ER), 2012 WL 2512964, at *4 (S.D.N.Y June 29, 2012) ("It is well established that the provision of low-cost supportive housing is not a 'public function' within the meaning of section 1983."); *Neal v. Martinez*, No. 01-CV-11587 (VM), 2003 WL 260524, at *2 (S.D.N.Y. Feb. 5, 2003) (allegations that owners and managers of building that receive federal funding and are under regulatory control by HUD are insufficient to show state action). The Court therefore dismisses Plaintiff's Section 1983 claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.     Disability Discrimination Claims**

Plaintiff invokes the ADA and appears to assert claims that Defendants discriminated against him based on a disability. The Court construes Plaintiff's allegations as attempting to assert claims for disability discrimination under the ADA, the Rehabilitation Act, and the FHA.

  **1.     The Americans with Disabilities Act and Rehabilitation Act**

The ADA consists of three parts: Title I, 42 U.S.C. § 12111 *et seq.*, which prohibits discrimination in employment; Title II, 42 U.S.C. § 12131 *et seq.*, which prohibits discrimination by public entities, such as state and local governments; and Title III, 42 U.S.C. § 12181 *et seq.*, which prohibits discrimination in access to public accommodations operated by private entities. *See PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). Because Plaintiff does not allege that his employer discriminated against him, Title I is inapplicable. Plaintiff cannot bring a claim under Title III because he sues the private management company of his residence and one of its employees, and residential housing does not qualify as a public accommodation under Title III. *See* 42 U.S.C. § 2000a(b); *Reid v. Zackenbaum*, No. 05-CV-1569, 2005 WL 1993394, at *4

(E.D.N.Y. Aug. 17, 2005) ("A residential facility, such as an apartment, is not a public accommodation under the ADA.").[3]

Title II of the ADA, which prohibits discrimination by public entities, covers some public housing.[4] *See Reid*, 2005 WL 1993394, at *4. The Court assumes, for the purpose of this order and without deciding, that Plaintiff resides in public housing that is covered by Title II of the ADA. Similarly, the Rehabilitation Act prohibits discrimination in "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Because Plaintiff alleges that the building in which he resides receives funding from HUD, the Court assumes for the purposes of this order that the Rehabilitation Act applies.

The substantive standard for Title II of the ADA and the Rehabilitation Act is similar. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To assert a claim under either of these statutes,

> a plaintiff must demonstrate that (1) he is a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or

---

[3] For purposes of Title III of the ADA, public accommodations are defined to include, among other things, "any inn, hotel, motel, or other establishment which provides lodging to transient guests." 42 U.S.C. § 2000a.

[4] Title II defines a "public entity" as including, among other things, "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B).

activities, or was otherwise discriminated against by the defendant because of his disability.

*McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012) (quoting *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004)).

Under the ADA and Rehabilitation Act, a "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C) (ADA); 29 U.S.C. § 705(20)(B) (Rehabilitation Act incorporating by reference the ADA's definition). "Under both statutes, a defendant discriminates when it fails to make a reasonable accommodation that would permit a qualified disabled individual 'to have access to and take a meaningful part in public services.'" *McElwee*, 700 F.3d at 640 (quoting *Powell*, 364 F.3d at 85)).

Here, Plaintiff states that he has a health aide and that he receives medical supplies via mail, but he alleges no facts describing the nature of his disability. The Court is therefore unable to determine whether Plaintiff has a disability as defined by these statutes. Furthermore, Plaintiff alleges that Hendricks assaulted him, that a security guard may have lost his medical supplies, and that Hendricks prevented him from using the community room to meet with his nephew. Plaintiff, however, does not allege any facts suggesting that any of these events were the result of discrimination or occurred because of his disability. The Court therefore dismisses Plaintiff's claims under the ADA and the Rehabilitation Act for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2.     The Fair Housing Act

Because Plaintiff alleges that he was discriminated against in the context of housing, the Court liberally construes the complaint as also attempting to assert a claim under the FHA. The

FHA "broadly prohibits discrimination in housing." *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979). Among other things, it prohibits the "refus[al] to sell or rent after the making of a bona fide offer, . . . [and the] refus[al] to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, . . . national origin," or disability.[5] 42 U.S.C. § 3604(a), (f)(1). It also prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, . . . national origin," or disability. § 3604(b), (f)(2).

Generally, to state a claim of intentional discrimination under the FHA, a plaintiff must allege facts showing that he is "'a member of a protected class,' suffered relevant 'adverse' treatment, and '. . . [he must sustain] a *minimal* burden of showing facts suggesting an inference of discriminatory motivation.'" *Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (summary order) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis in original, footnote omitted)). "'[A] plaintiff need only give plausible support to a minimal inference of discriminatory motivation' at the pleading stage." *Id.* at 45-46 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)). Thus, "a plaintiff may not need to prove that [his] protected status was a but-for cause of the adverse action [he] suffered, but only a motivating factor." *Id.* at 46 (citing, *inter alia*, *Vega*, 801 F.3d at 86); *see, e.g.*, *Sykes v. NYC Hous. Auth.*, No. 22-CV-2127 (MKV), 2022 WL 875902, at *2 (S.D.N.Y. Mar. 24, 2022).

---

[5] "To demonstrate a disability under the FHA, a plaintiff must show: (1) 'a physical or mental impairment which substantially limits one or more . . . major life activities'; (2) 'a record of having such an impairment'; or (3) that he or she is 'regarded as having such an impairment.'" *See Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 40 (2d Cir. 2015) (quoting 42 U.S.C. § 3602(h)).

Here, Plaintiff does not state a claim under the FHA because he does not allege facts suggesting that he has a disability as defined by the FHA or that any adverse actions Defendants took against him were motivated by his disability. The Court therefore dismisses Plaintiff's FHA claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.      State Law Claims**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid

claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim under the ADA, Rehabilitation Act, and FHA, the Court grants Plaintiff 30 days' leave to amend his complaint to remedy the deficiencies identified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

## CONCLUSION

The Court dismisses the complaint, filed IFP under 28 U.S.C. § 1915(a)(1), for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), with 30 days' leave to replead.

The Court declines to exercise supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See* 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:   May 27, 2025
         New York, New York

                                             /s/ Laura Taylor Swain
                                             LAURA TAYLOR SWAIN
                                             Chief United States District Judge