UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DELROY ASKINS,

                Plaintiff,

-against-

PRESTIGE MANAGEMENT INC.; LOWELL HENDRICKS,

                Defendants.

25-CV-0461 (KMW)

SECOND ORDER OF DISMISSAL

---

KIMBA M. WOOD, United States District Judge:

Plaintiff, proceeding *pro se* and *in forma pauperis* ("IFP"), filed this complaint alleging that Defendants violated his rights. By order dated May 27, 2025, Chief Judge Laura Taylor Swain dismissed Plaintiff's original complaint for failure to state a claim on which relief may be granted, and granted Plaintiff leave to replead his claims in an amended complaint. ECF No. 7. Plaintiff filed an amended complaint on July 25, 2025, and the Court has reviewed it. The Court dismisses this action for the reasons set forth below.

## BACKGROUND

Plaintiff brings this action against Prestige Management, Inc. and Lowell Hendricks, who the Court understands to be the superintendent of Plaintiff's apartment building. In the original complaint, Plaintiff alleged that Hendricks assaulted him and denied Plaintiff access to the community room of his apartment building. (ECF No. 1 at 8.) Plaintiff also suggested that the security guard or other building management took a shipment of medical supplies that was addressed to Plaintiff. (*Id.*)

By order dated May 27, 2025, Chief Judge Swain dismissed the complaint. (ECF No. 7.) Specifically, the court: (1) dismissed Plaintiff's federal constitutional claims because both

defendants are private parties who are not alleged to work for any government body; (2) construed the complaint as asserting claims for disability discrimination under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Fair Housing Act ("FHA"); (3) dismissed Plaintiff's ADA and Rehabilitation Act claims because Plaintiff alleged no facts demonstrating he has a disability as defined by those statutes and alleged no facts suggesting that any of the adverse events Plaintiff experienced were the result of discrimination or occurred because of a disability; and (4) dismissed his FHA claims because Plaintiff did not allege facts demonstrating that he has a disability as defined by the FHA or that any adverse actions Defendants took against him were motivated by his disability.

Chief Judge Swain granted Plaintiff leave to replead his claims under the ADA, Rehabilitation Act, and FHA in an amended complaint that cured those deficiencies.

The following facts are drawn from the amended complaint[1]. Plaintiff is 62 years old, and he is a "paraplegic wheelchair bound individual" with a spinal cord injury. (ECF 11, at 8.) Plaintiff requires use of a catheter four to five times a day, and "it is vital that [he] have the supplies to carry out [his] daily activities." (*Id.*)

On January 10, 2024, the superintendent, likely a reference to Hendricks, "started yelling" at Plaintiff, accusing him of spitting in the elevator, an allegation which Plaintiff denies. (*Id.*) Later that evening, while Plaintiff was exiting the elevator, the superintendent "came at [him]," causing Plaintiff to "spray [his] pepper spray in the air" and go back into the elevator. (*Id.*) Before the elevator door could close, the superintendent entered the elevator, prevented Plaintiff from leaving, and "started choking and punching" Plaintiff. (*Id.*) Plaintiff maintains

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation appear as in the complaint, unless noted otherwise.

that the superintendent attacked Plaintiff "because of [his] disability" and that if Plaintiff "was an able body individual standing on two f[ee]t, this would never have happened." (*Id.*)

Plaintiff alleges that the building's security guard never came to Plaintiff's aid, and, when the elevator opened, Plaintiff called the police. (*Id.*) The police officer instructed Plaintiff to come to the precinct the following day to file a complaint, which Plaintiff suggests he did. (*Id.*) Plaintiff maintains that the building management "never to this day checked on me to ask[] what had happened or [to] apologize[] for what their employee ([L]owell) did to [him]." (*Id.*)

Plaintiff alleges that he has had nightmares about the incident and that he still experiences back and neck problems. (*Id.*) He also alleges that, each time he must ride the elevator, he has to "relive getting choke[d], beat[en] up, [and] assaulted." (*Id.* at 9.)

On March 15, 2024, Plaintiff reported to the police that his medical supplies, which were recently delivered to his building, were missing. (*Id.*) Plaintiff alleges that the officer reviewed the security footage from Plaintiff's building and "discovered that the video camera jump[ed]," suggesting that "something is missing." (*Id.*)

On November 8, 2024, the superintendent denied Plaintiff access to the community room after Plaintiff mentioned to the manager that he was planning on using the community room with his great nephew. (*Id.*) Plaintiff alleges that the super "believe[s] that the community room is just for him" and that "he is the only person that can use the T.V. while folding his clothes and everyone else needs to go somewhere else." (*Id.*)

Plaintiff asserts that the management is as much to blame for these incidents as Hendricks "because they do not take the responsibility to check on complaints or follow up issues that the daily manager brings to their attention." (*Id.*)

Plaintiff seeks $10 million in damages, and an injunction requiring that cameras be placed in all "[b]lind [s]pot[s]" in his building. (*Id.*)

3

## DISCUSSION

A.   **The Americans with Disabilities Act and Rehabilitation Act**

For the reasons stated in Chief Judge Swain's May 27, 2025 Order, Titles I and III of the ADA are inapplicable to Plaintiff's claims.  (*See* ECF 7, at 5-6.)  Title II of the ADA, which prohibits discrimination by public entities, covers some public housing.[2]  *See Reid v. Zackenbaum*, No. 05-CV-1569, 2005 WL 1993394, at *4 (E.D.N.Y. Aug. 17, 2005).  The Court assumes, for the purpose of this Order, that Plaintiff resides in public housing that is covered by Title II of the ADA.  The Rehabilitation Act prohibits discrimination in "any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  Because Plaintiff alleged in the original complaint that the building in which he resides receives funding from the United States Department of Housing and Urban Development ("HUD"), the Court assumes for the purposes of this order that the Rehabilitation Act applies.

The substantive standards for Title II of the ADA and the Rehabilitation Act are similar.  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity."  42 U.S.C. § 12132.  The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  To assert a claim under either of these statutes,

---

[2] Title II defines a "public entity" as including, among other things, "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. § 12131(1)(B).

4

> a plaintiff must demonstrate that (1) he is a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability.

*McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012) (quoting *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004)).

Under the ADA and Rehabilitation Act, a "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C) (ADA); 29 U.S.C. § 705(20)(B) (Rehabilitation Act incorporating by reference the ADA's definition). "Under both statutes, a defendant discriminates when it fails to make a reasonable accommodation that would permit a qualified disabled individual 'to have access to and take a meaningful part in public services.'" *McElwee*, 700 F.3d at 640 (quoting *Powell*, 364 F.3d at 85)).

The Court assumes for the purposes of this order that Plaintiff has alleged sufficient facts to demonstrate that he has a disability under the ADA and Rehabilitation Act. However, Plaintiff alleges no facts suggesting that Defendants discriminated against him because of his disability. With respect to his missing medical supplies and Hendrick's denying Plaintiff access to the community room, Plaintiff alleges no facts suggesting that his disability had anything to do with these events. With respect to the alleged assault, Plaintiff asserts that Hendricks attacked him "because of [his] disability" and that if Plaintiff "was an able body individual standing on two f[ee]t, this would never have happened." (ECF 11, at 8.) These assertions appear to be purely speculative, however; Plaintiff alleges no facts suggesting that his disability in any way motivated Hendricks to attack him. "It is not enough for Plaintiff to state that [he] is disabled and that bad things happened to [him] . . . [he] must allege facts from which a reasonable trier of

5

fact could infer that these things happened to [him] because of discrimination on the basis of [his] disability." *Amato v. McGinty*, No. 1:21-CV-0860, 2022 WL 226798, at *9 (N.D.N.Y. Jan. 26, 2022). The Court therefore dismisses Plaintiff's ADA and Rehabilitation Act claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.     Fair Housing Act**

The FHA "broadly prohibits discrimination in housing." *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979). Among other things, it prohibits the "refus[al] to sell or rent after the making of a bona fide offer, . . . [and the] refus[al] to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, . . . national origin," or disability.[3] 42 U.S.C. § 3604(a), (f)(1). It also prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, . . . national origin," or disability. § 3604(b), (f)(2).

Generally, to state a claim of intentional discrimination under the FHA, a plaintiff must allege facts showing that he is "'a member of a protected class,' suffered relevant 'adverse' treatment, and '. . . [he must sustain] a *minimal* burden of showing facts suggesting an inference of discriminatory motivation.'" *Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (summary order) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis in original, footnote omitted)). "'[A] plaintiff need only give plausible support to a minimal inference of discriminatory motivation' at the pleading stage." *Id.* at 45-46 (quoting

---

[3] "To demonstrate a disability under the FHA, a plaintiff must show: (1) 'a physical or mental impairment which substantially limits one or more . . . major life activities'; (2) 'a record of having such an impairment'; or (3) that he or she is 'regarded as having such an impairment.'" *See Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 40 (2d Cir. 2015) (quoting 42 U.S.C. § 3602(h)).

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)).  Thus, "a plaintiff may not need to prove that [his] protected status was a but-for cause of the adverse action [he] suffered, but only a motivating factor." *Id.* at 46 (citing, *inter alia*, *Vega*, 801 F.3d at 86); *see, e.g.*, *Sykes v. NYC Hous. Auth.*, No. 22-CV-2127 (MKV), 2022 WL 875902, at *2 (S.D.N.Y. Mar. 24, 2022).

Here, as discussed above with respect to Plaintiff's ADA and Rehabilitation Act claims, even if the Court assumes that Plaintiff has as a disability under the FHA, his allegations do not suggest that his disability was a motivating factor in any of the adverse actions taken by Defendants.  The Court therefore dismisses Plaintiff's FHA claims for failure to state a claim on which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.     State Law Claims**

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted).  Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting.  *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

7

### D. Further Leave to Amend is Denied

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend and has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because Plaintiff has already been given an opportunity to amend his claims and because the amended complaint contains no indication that the defects in his allegations can be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

## CONCLUSION

The Court dismisses Plaintiff's amended complaint, filed IFP under 28 U.S.C. § 1915(a)(1), for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court declines to exercise supplemental jurisdiction over any state law claims Plaintiff may be asserting. *See* 28 U.S.C. 1367(c)(3).

Nothing in this Order limits Plaintiff's right to seek any relief to which he may be entitled in state court.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter judgment dismissing this action.

SO ORDERED.

Dated:  September 17, 2025
        New York, New York

/s/ Kimba M. Wood
KIMBA M. WOOD
United States District Judge